UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN MANIS, <br><br> Plaintiff, <br><br> v. <br><br> HERRIN LAUNDRY PRODUCTS d/b/a MAYTAG, <br><br> Defendant. | Case No. 05-cv-4150-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for summary judgment filed by defendant Whirlpool Herrin Division f/k/a Herrin Laundry Products, a division of Maytag Corporation ("Maytag") (Doc. 24). Plaintiff John Manis ("Manis") has responded to the motion (Docs. 35 & 36).

**I.      Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. This standard is applied with special scrutiny in cases, such as employment discrimination cases, that often turn on issues of intent and credibility. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Where the moving party

fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas*, 209 F.3d at 692. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

**II.     Facts**

Construing the evidence in the light most favorable to Manis, and drawing all reasonable inferences in his favor, the admissible evidence establishes the following facts.

A.     Employment at Maytag

Manis was first hired by Maytag in March 2001. Manis's employment was covered by a collective bargaining agreement ("CBA") that contained an absenteeism policy. *See* CBA art. 13. Under the absenteeism policy, each employee was given fifteen points. He would lose one or more points for each unexcused absence, and if his total reached zero, he was terminated. An employee could gain a point, however, for perfect attendance for thirty days in a row. Where an absence was first recorded as an unexcused but where it later became apparent that it was an

excused absence because it was a "reported occupational injury or illness," CBA § 13.2.A, Maytag officials would manually make the change to an employee's time sheet.

There was often a two to three week lag time between when an employee reached zero points and when Maytag discovered it. Janice McConnaughy, Maytag's employee relations manager, had an unwritten, informal policy of not terminating an employee if, by the time she discovered the employee had dropped to zero points, the employee had accumulated a point for good attendance putting him back in the black.

Manis performed several jobs during his tenure with Maytag. In February 2003, Manis reported injuries to his back, forearm, wrist and elbow resulting from working in the dryer manufacturing line. In April 2003, he requested a transfer to another department because of the physical toll the job was taking on his body, and in May or early June 2003, Maytag transferred him to the washer manufacturing line.

    B.    Manis's Attendance

As of the beginning of 2003, Manis was down to six attendance points, and by the beginning of June 2003, he was down to zero points by Maytag's count. Manis and Maytag had different opinions on whether Manis's May 9, 2003, tardiness for a court appearance was excused or unexcused. The absenteeism policy excused time for "verified, mandatory court appearance[s] (due to no fault of the employee)," CBA § 13.2.A, and Manis and Maytag apparently had differing views about whether Manis's appearance as a defendant in a civil lawsuit met this criteria. Manis had asked McConnaughy before the court appearance whether it would be excused, and she had told him it would not. She told Manis he could speak to William Townsend ("Townsend"), Maytag's director of human resources, further about the matter, but Manis never did.

Manis accumulated one point on June 8, 2003, but then lost it due to an absence later that same week.  This left him again at a balance of zero by Maytag's count heading into July 2003.  McConnaughy did not detect Manis had reached zero points during this time period, so Maytag did not terminated Manis.

On July 14, 2003, Manis accumulated another point, but on July 16, 2003, he called in complaining that his thighs were too raw from heat to work that day.  His thighs had been injured when, the day before, he had walked a lot at work in temperatures reaching at least 130 degrees and the friction from walking in sweat-drenched clothes had worn his thighs raw.  Because Manis did not expressly tell Maytag personnel that his injury was work-related and did not submit an injury report at the time, Maytag did not view it at an excused absence for a "reported occupational injury or illness," CBA § 13.2.A, and took his one remaining attendance point from him for that absence.  According to Maytag's records, Manis was down to zero points again, although McConnaughy had not discovered this yet.

In late July, Maytag approved Manis's taking vacation leave the first few days of August 2003.  Prior to the start of his shift on July 31, Manis visited Maytag's on-site medical office and set up an appointment with a physician's assistant for August 5, during his vacation period, to check his arm and wrist, which were still giving him problems.  Manis completed no paperwork at that time.  On his way back to his work station and within minutes of leaving the medical office, Manis's supervisor told him McConnaughy wanted to see him and that he should report to her office immediately.

On or shortly before July 31, McConnaughy had become aware that Manis had reached zero points because of his July 16 absence.  Because McConnaughy was concerned over Maytag's disagreement with Manis as to whether his May 9 court appearance tardiness was

excused or unexcused, she had then consulted with Townsend to ensure that he wanted to stand by the position that the May 9 tardiness was unexcused and wanted to go through with terminating Manis for reaching zero attendance points. Townsend had reviewed Manis's entire attendance record and ultimately agreed with McConnaughy that Manis should be terminated. At that time, although he was aware from his review of Manis's attendance records that Manis's July 15 injury was due to his thigh injury, he was not aware that the injury was work-related or that Manis was in any other way claiming to suffer from a work-related injury. When they made the decision to terminate Manis's employment, neither Townsend nor McConnaughy were aware that Manis intended to exercise any rights under the Illinois Workers' Compensation Act.

When Manis reached McConnaughy's office on July 31, McConnaughy and Manis's union representative were there. McConnaughy told Manis he was being terminated because he had run out of attendance points. At that time, Manis had not yet filed an application for workers' compensation benefits and had not told McConnaughy, Townsend or anyone else at Maytag that he intended to do so.

Manis's union grieved his termination, raising the issue of the May 9 point deduction, but later withdrew the grievance.

    C.    <u>Post-Termination Events</u>

On August 29, 2003, believing it was the last day he could make a report to seek workers' compensation benefits, Manis came to the Maytag plant to fill out two accident reports, one for his arm injuries that had been bothering him since early 2003 and one for his thigh injuries from July 15, 2003.

In November 2003, Manis first filed a claim for workers' compensation benefits for arm and hand injuries. He filed another claim in July 2004 for the same injuries.

5

On July 27, 2005, Manis filed a state court action alleging that Maytag terminated his employment in retaliation for exercising his workers' compensation rights.  Maytag removed the case to federal court on the basis of diversity jurisdiction and filed a motion for summary judgment.  It argues that Manis cannot demonstrate a causal connection between the exercise of his workers' compensation rights and the decision to fire him.  It further argues that Manis cannot demonstrate that its stated reason for firing Manis – his attendance record – was pretextual.

**III.   Analysis**

Illinois law forbids an employer to retaliate against an employee because he filed a claim under the Workers' Compensation Act, 820 ILCS 305/1 *et seq*.  *Kelsay v. Motorola, Inc.,* 384 N.E.2d 353, 357 (Ill. 1978);  820 ILCS 305/4(h).  In order to prevail on a workers' compensation retaliatory discharge claim under Illinois law, a plaintiff must ultimately show that he

> (1) was the defendant's employee before his or her injury;  (2) exercised a right granted by the Workers' Compensation Act;  and (3) was discharged from his or her employment with a causal connection to his or her filing a workers' compensation claim.

*Tullis v. Townley Eng'g & Mfg. Co., Inc.*, 243 F.3d 1058, 1062 (7th Cir. 2001);  *accord Clemons v. Mechanical Devices Co.*, 704 N.E.2d 403, 406 (Ill. 1998);  *McCoy v. Maytag*, No. 06-2417, 2007 WL 2164156 at *4 (7th Cir. July 30, 2007);  *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 767 (7th Cir. 1994).  "The element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee."  *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992);  *accord McCoy*, 2007 WL 2164156 at *4;  *Hiatt*, 26 F.3d at 767.

There is some dispute about the methods a plaintiff may use to withstand summary judgment on a retaliatory discharge claim which finds itself in federal court on the basis of

diversity jurisdiction. *McCoy*, 2007 WL 2164156 at * 4. Some courts believe that a plaintiff may use a version of the indirect burden-shifting method approved in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because it is a purely procedural mechanism. *See Hiatt*, 26 F.3d at 767. Others believe that the method of resisting summary judgment may amount to a substantive issue that under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), is governed by state law, which soundly rejects the use of the *McDonnell Douglas* burden-shifting framework in retaliatory discharge cases and requires a direct method of proof. *See McCoy*, 2007 WL 2164156 at *4; *Carter v. Tennant Co.*, 383 F.3d 673, 678 (7th Cir. 2004) (questioning availability of indirect, burden-shifting method in federal court for state law retaliatory discharge claims); *Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000) (Posner, J., concurring) (same); *Clemons*, 704 N.E.2d at 407-08 (burden shifting mechanism unavailable in state court). Determining whether the *McDonnell Douglas* framework is available to a plaintiff requires a court to decide whether the framework is substantive, requiring the application of state law, or procedural, requiring the application of federal law. *McCoy*, 2007 WL 2164156 at *4.

This Court need not decide this question because Manis cannot prevail with or without the burden-shifting framework. Maytag has provided a valid, non-pretextual reason for terminating Manis, so Manis cannot establish the causation element of the Illinois framework or the pretext element of the *McDonnell Douglas* framework.

    A.    <u>Illinois Framework</u>

Maytag focuses on the third element of a retaliatory discharge plaintiff's *prima facie* case: whether Manis can show his discharge was causally connected to his filing a workers' compensation claim (or his intending to do so). It argues that no reasonable jury could infer a causal link between Manis's filing of a workers's compensation claim (or his intent to file such a

claim) and his discharge.  Essentially it argues that the five months between Manis's first reporting his arm injuries in February 2003 and his discharge in July 2003 was too attenuated to draw any causal inference based on timing.  On the other hand, Maytag argues that there is no evidence from which a reasonable jury could infer that Manis's scheduling an appointment on July 31 had any causal relation to his firing less than an hour later.  There is no evidence that McConnaughy or Townsend knew he had scheduled the appointment and was planning to file a workers' compensation claim when they made the decision to terminate him or that they made the termination decision after his visit to the medical office on the morning of July 31.  Manis counters with the argument that his termination was improper under the absenteeism policy.

It is true that suspicious timing may be circumstantial evidence of a causal relationship. *Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 762 (7th Cir. 2001).  However, to establish a causal connection merely by temporal proximity, the employer's adverse action must follow "fairly soon" after or be "very close" to the employee's protected conduct."  *Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (Title VII context);  *see, e.g., Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 321 (7th Cir. 1992) (six months insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four months insufficient).  *Compare Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1314-15 (7th Cir. 1989) (one week sufficient); *Johnson v. Sullivan*, 945 F.2d 976, 980 (7th Cir. 1991) (one day sufficient).

In this case, too much time passed between Manis's original complaint of work-related arm problems with his back and arms for a reasonable jury to infer the termination was caused by Maytag's knowledge of those injuries and their potential to spawn a workers' compensation claim.

The temporal connection is much stronger between Manis's July 31 visit to the medical

office and his termination less than an hour later.  The overwhelming majority of the evidence, however, does not support an inference of causation.  The evidence shows that McConnaughy and Townsend had consulted about Manis's attendance record prior to the decision to fire him and that Townsend had reviewed his attendance records at McConnaughy's request to confirm the decision.  The consultation and decision were made in enough time for McConnaughy to arrange for Manis's union representative to be present when she actually delivered the termination notice and to contact Manis's supervisor to ask him to relay the message for Manis to report to her office.  No reasonable jury could believe that this all occurred between the time Manis scheduled his appointment on the morning of July 31 and when he was called to McConnaughy's office minutes later.  Furthermore, there is simply no evidence that McConnaughy or Townsend knew Manis was suffering from a recent work-related injury for which he was planning to seek workers' compensation benefits.  It is true that they both could see from his attendance records that Manis had injured his thighs such that he could not attend work on July 16, but there is simply nothing from which a reasonable jury could conclude they knew the injury was work-related or that Manis was contemplating filing a workers' compensation claim.  Without such knowledge, Manis's workers' compensation claim (or his intent to file one) could not have played any role in the decision to terminate him.

In addition, there is no evidence that Maytag treated other similarly situated employees differently, which can also support an inference of discriminatory intent.  *Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 762 (7th Cir. 2001).  In this case, there is no evidence that any other employees who had reached zero attendance points but who had not filed, and were not intending to file, workers' compensation claims were treated any better than he was.  On the contrary, the evidence shows that 43 of the 54 employees Maytag fired in 2003 for attendance

reasons had not filed workers' compensation claims. No reasonable jury could infer from this evidence that Maytag treated Manis differently than other employees with attendance problems who had not filed workers' compensation claims.

Moreover, Maytag has given a reason for firing Manis – McConnaughy's discovery that he had reached zero attendance points – and there is no evidence from which a reasonable jury could find that it is a pretextual reason. Manis argues that Maytag's approach to docking him attendance points demonstrates that its stated reason for firing him was pretext. He argues that a reasonable jury could find that Manis's May 9 tardiness and July 16 absence should have been excused under Maytag's attendance policy.

Manis's argument is misplaced. When it comes the pretext inquiry, the question is not whether the employment decision was right or wrong but whether the employer honestly believed the reason. Pretext can be established by showing that the employer did not honestly believe the reasons it gave for its action and is just "covering its tracks." *See McCoy v. Maytag*, No. 06-2417, 2007 WL 2164156 at *5 (7th Cir. July 30, 2007); *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 (7th Cir. 2000); *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir. 2000). "[P]retext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *McCoy*, 2007 WL 2164156 at * 5 (internal quotations omitted).

In this case, regardless of whether Manis's attendance records were accurate and in accordance with the CBA, the evidence shows that McConnaughy and Townsend based their decision to terminate him on those records. Although they knew Manis disputed whether the May 9 absence should have been excused, the evidence is clear that they had resolved that question in a way they believed was in accordance with the CBA. There is simply no evidence

that they did not honestly believe Manis was down to zero attendance points and deserved to be terminated for that reason. Since Manis has presented no evidence that calls into question the sincerity of McConnaughy and Townsend's proffered reasons for terminating him, no reasonable jury could find Maytag's reason for terminating Manis was a pretext.

Maytag is therefore entitled to summary judgment because Manis cannot prove the element of causation. *See Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992); *accord McCoy*, 2007 WL 2164156 at *4; *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 767 (7th Cir. 1994).

B.    *McDonnell Douglas* Method

In order to withstand a motion for summary judgment on a retaliation claim using the *McDonnell Douglas* burden-shifting mechanism, a plaintiff must first establish a *prima facie* case by showing that (1) he engaged in a statutorily protected activity, (2) he performed his job according to his employer's legitimate expectations, (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 559 (7th Cir. 2004); *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). There is no need to show a causal connection using the indirect method. *Rhodes*, 359 F.3d at 508; *Stone*, 281 F.3d at 644. If the plaintiff establishes a *prima facie* case, the burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Hudson*, 375 F.3d at 559; *Rhodes*, 359 F.3d at 508. If the defendant is able to provide evidence of such a reason, the burden shifts back to the plaintiff to show that the articulated reason is actually a pretext. *Hudson*, 375 F.3d at 559; *Rhodes*, 359 F.3d at 508.

11

For the reasons discussed in the prior section, the Court finds that Manis cannot establish the fourth element of the *prima facie* case, that he was treated less favorably than similarly situated employees who did not file or were not contemplating filing workers' compensation claims.

Furthermore, there is no evidence that Maytag's legitimate, non-retaliatory reason for terminating Manis is a pretext.  Maytag has proffered a legitimate, non-discriminatory reason for Manis's termination – his loss of all his attendance points.  For the same reasons discussed in connection with Manis's attempt to establish pretext under the Illinois framework, the Court finds that no reasonable jury could find that he can establish pretext under the *McDonnell Douglas* burden-shifting method.

In sum, the Court finds that there is no evidence from which a reasonable jury could find that Manis's worker's compensation claim or his desire to file one was causally related to his termination.  There is no genuine issue of material fact, and Maytag is entitled to summary judgment as a matter of law.

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Maytag's motion for summary judgment (Doc. 24) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  August 22, 2007**

> s/ J. Phil Gilbert
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**